rights in respect thereto had become legally fixed; so that it came too late to effect the increase in rental demanded by the landlord. The notice could not put the tenant to an election to remain in or move out until he received it; for when the law requires a notice to be given, and does not prescribe the mode of service, it must, as a rule, be served personally. Wade, Notice, § 1334; Rathbun v. Acker, 18 Barb. 393; McDermott v. Board, 25 Barb. 635. The letting was part of the scheme by which the exchange of properties was to be effected, and must be construed with reference to it. Dowd testified that he told the defendant he did not care to let him move into the house until he became the owner, as it might complicate matters somewhat, but that he finally consented to let him in at the nominal rent agreed upon. The plaintiff's assignor claimed that the exchange was abandoned about October 1st; while the defendant testified that it was not given up until he received the notice as to increased rent. At all events, it is clear that the parties contemplated that the defendant was to become the owner of the house, and that the rent fixed was merely nominal, to charge the defendant's possession as that of a tenant, rather than one of a vendee in possession. Under the circumstances, the notice to charge the defendant with increased rent should have been served before the new term commenced; and the defendant, by continuing his possession into the new term, might be held to have acquiesced in the claim made by the landlord. But the notice was not served until after the new term commenced, and, within a reasonable time after receiving it, the defendant moved out, thereby manifesting his determination not to assent to the terms imposed. We think the plaintiff failed to establish any agreement upon the part of the defendant to pay the increased rent, and that the justice properly found for the defendant. The sum tendered into court, $6.50, was sufficient to cover all liability on the part of the defendant for his occupation of the premises, together with the taxable costs, and the sum tendered at once became the property of the plaintiff. Cow. Treat. (Kingsley's Ed.) § 1151.

It follows that the judgment must be affirmed, with costs.

BISCHOFF, J., concurs.

---

(20 Misc. Rep. 619.)

### NOLAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Term. July 1, 1897.)

STREET RAILROADS—COLLISION WITH TRAVELER.

In an action against a railroad company for injury done to the plaintiff's wagon by a dummy engine, operated by the defendant in a city street, it appeared by the plaintiff's evidence that plaintiff attempted to drive across the tracks when there was a clear space in the street beyond them, and while the dummy engine was a block away, but, before he could cross, the street was obstructed by teams, and he was obliged to stop directly on the track, and in full view from the engine, which, nevertheless, ran him down. *Held* that, as the defendant's engine was being operated in the public street, the rule as to observing all signs of approaching danger did not apply to plaintiff, and the court was authorized to find that defendant was responsible for the injury.

Appeal from First district court.

Action by Philip Nolan against the New York Central & Hudson River Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before McADAM and BISCHOFF, JJ.

Henry B. Dwyer, for appellant.
Charles T. McBurney, for respondent.

BISCHOFF, J. The plaintiff sued for damages represented by an expense incurred for necessary repairs to his truck, which was injured through a collision with a "dummy" engine operated by the defendant on Hudson street, upon tracks laid in the center of the highway. From the plaintiff's testimony it appeared that he attempted to cross Hudson street, at its intersection with Laight street, proceeding westerly, but was compelled to come to a stop upon the defendant's tracks, because of the congestion of traffic upon the westerly side of Hudson street, a space which was clear when he started to cross, having become blocked by trucks while he was proceeding. When he had reached the westerly track, and had come to a stop upon it, the dummy train was a block away, and his predicament was obvious to the engineer, or should have been, since there was nothing to obstruct the view along the track, but the train proceeded at a rapid rate, and, without slackening its speed, the engine collided with the truck. A boy on horseback preceded the train, riding about a block ahead of it, and waving a red flag, and the plaintiff testified that this boy "dodged around" the front of the truck while it was standing upon the track of the approaching train. Further, he testified that he first saw the boy when the latter was about one-third of the way up the block, and knew of the approach of the train when he first attempted to cross the street, but expected to drive through the opening in the line of trucks upon the opposite side, and could readily have done so before the train reached the place had this opening remained.

In his account of the circumstances the plaintiff was substantially corroborated by a totally disinterested witness, a bystander at the time of the collision; and, upon the facts thus detailed, there can be no doubt that the justice was well authorized to find that the defendant's negligence, in the absence of negligence upon the plaintiff's part, was the efficient cause of the accident. The plaintiff's attempt to cross the street could be taken as justified by the surrounding circumstances, the train not being a thing of danger at the time, and his stopping upon the track was called for by circumstances for which he was not responsible. On the other hand, the engineer of this train had ample time in which to bring it to a stop after the plaintiff's situation became obvious; that is, unless the train was proceeding at a rate evidencing a total disregard of duty to others upon the part of the defendant's servants. This was not the case of an attempted crossing of tracks upon which trains might be expected to run at a high rate of speed, with an attendant duty upon the wayfarer's part to seek and observe all signs of approaching danger. This train was being operated upon the public street, and it was for the defendant to manage it with a due observance of the rights of persons lawfully

using the highway.. It cannot be held that the defendant's duty was observed in this case where the train was propelled along this street without an attempt to avoid a collision with any person who, under whatever circumstances, failed to leave the track at the approach of the warning horseman. The version of the accident as given by the defendant's witnesses, all employés of the defendant, was totally different, and, if credited, would have shown the plaintiff to have been not only wantonly reckless, but, indeed, mentally deficient. According to these witnesses, the train and the truck were both caused to come to a stop by the "dummy boy's" signal before the plaintiff had reached the track at all; that the dummy boy then signaled the train to proceed, which signal was obeyed, but, when the train had come to within 10 feet of the plaintiff, the latter suddenly started forward, in an attempt to pass over the track, and the collision was unavoidable. One of these witnesses, the dummy boy himself, testified that the engine was within five feet of the truck when this sudden attempt was made, and that such attempt was impossible of success,—a proposition which no one would undertake to dispute. The account thus given seems almost incredible, and is directly contradicted by the plaintiff's witness Rowland, who, upon rebuttal, testified positively that the train did not come to a stop, but was, on the contrary, proceeding continuously at an unusual speed. We can have no hesitation in holding that the justice properly accepted the plaintiff's evidence, corroborated, as it was, by Rowland's disinterested testimony, rather than the unsatisfactory version of the matter given by the interested witnesses for the defense.

Judgment affirmed, with costs.

McADAM, J., concurs.